IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| RICHTER CORNBROOKS GRIBBLE, INC., | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-09-1711 |
| BBH DESIGN, P.A., | * | |
| Defendant. | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Richter Cornbrooks Gribble, Inc. ("RCG") sued BBH Design, P.A. ("BBH") for breach of contract and unjust enrichment. Pending is BBH's motion for summary judgment. For the following reasons, that motion will be granted.

I. Background[1]

RCG is a Baltimore architectural firm that designs nursing schools. Jonathan Fishman Decl. 2d ¶ 2. BBH is an architectural firm based in Research Triangle Park, North Carolina. Douglas Hall Aff. ¶ 3, May 11, 2010. Jonathan Fishman is a principal of RCG. Fishman Decl. 2d ¶ 1. Douglas Hall is a principal of BBH.

---

[1] In reviewing BBH's motion for summary judgment, RCG's evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Hall Aff. ¶ 2. In fall 2007, RCG and BBH discussed collaborating on the design of a nursing school at North Carolina Central University ("NCCU"). *Id.* ¶ 5. The project had an initial pre-design, planning and programming phase, and a subsequent design phase. *Id.* ¶ 5.

Throughout 2008 and 2009, the parties discussed the project. Pl.'s Opp'n, Exs. C-G. RCG alleges that during a January 2008 telephone call ("January call"), Hall and Fishman orally agreed to pursue both phases of the project and to split the work and architectural fees on a 50:50 basis. Pl.'s Opp'n 3. According to RCG, this contract is memorialized in a January 28, 2009 email exchange between Fishman and Hall ("January emails") and a Letter of Intent signed by the parties in June 2008 ("LOI"). *Id.* 7, 13-14.

The January emails included: (1) a spreadsheet sent from Hall to Fishman detailing a proposed work and fee split for the NCCU project, (2) Fishman's statement to Hall that the proposed split was "not at all acceptable to RCG" and was "a far cry from the 50[:]50 split originally discussed," and (3) Hall's response that "[t]he goal is 50[:]50" but "[t]he detail and how that works with hours, deliverables and liabilities need more discussions . . . I would love for a 50[:]50 result next week." Pl.'s Opp'n Ex. B. RCG asserts that the parties never signed a written contract for the two-phase 50:50 partnership because in the

2

industry it is "entirely customary for these agreements to be made orally . . . [and] if one firm were to request that another reduce this type of agreement to a formal written contract, the other firm would likely be insulted." Fishman Decl. 2d ¶ 15.

During May and June of 2008, the parties negotiated the LOI. Pl.'s Opp'n, Exs. C, D. It was executed by BBH on June 10, 2008 and signed by Fishman at RCG's Baltimore office. Pl.'s Opp'n, Ex. C. The LOI states:

> This Letter of Intent is not intended to contractually bind either [party] in any way, nor shall [either party] be legally bound until an Agreement, in form and content satisfactory to both [parties], is fully executed . . . The scope of services at this time is only for Pre-Design and Planning and Programming Design services . . . It is the intent of BBH Design to contract with [RCG], if and when BBH Design enters into contract with [NCCU], and that the fees paid shall be in proportion to the work performed. It is also our intent to contract using AIA Document C401, Agreement between Architect and Consultant.

*Id.*

In September 2008, NCCU awarded BBH a contract for the pre-design, planning, and programming phase of the project. Hall Aff. ¶ 11. A month later, RCG and BBH executed an Agreement between Architect and Consultant ("Consulting Agreement"), as anticipated by the LOI. Def. Summ. J. Mot., Ex. 3. The Consulting Agreement stated the services RCG would provide to BBH during the pre-design, planning, and programming phase and also set RCG's compensation for those services at $89,120.00. Hall

3

Aff. ¶¶ 13-14, 18. RCG performed its services and received full payment from BBH. *Id.* ¶¶ 17-19.

Following completion of the pre-design, planning and programming phase, a dispute arose between BBH and RCG. Pl.'s Opp'n, Exs. E, F, & G. BBH continued to contract with NCCU for the remaining design phase of the project. Hall Aff. ¶ 23. However, BBH could not reach agreement with RCG on its participation in the second phase; their negotiations ended in early 2009. Pl.'s Opp'n, Exs. E, F, & G. RCG has provided no further services to BBH and has received no further compensation from BBH. Hall Aff. ¶¶ 26-27.

On June 30, 2009, RCG sued BBH. Paper No. 1. On March 19, 2010, BBH moved for summary judgment. Paper No. 27.

II. Analysis

    A.   Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 249 (1986). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002), but the Court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003)(quoting *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993)).

B. Choice of Law

When sitting in diversity, a federal court follows the choice-of-law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 497 (1941). Thus, Maryland choice-of-law rules govern. For contract and unjust enrichment claims, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law where the contract was formed. *Allstate Ins. Co. v. Hart,* 327 Md. 526, 611 A.2d 100, 101 (Md. 1992); *RaceRedi Motorsport, LLC v. Dart Mach., Ltd.,* 640 F. Supp. 2d 660, 665 (D. Md. 2009). A contract is formed where the last act required to make it binding occurs. *Konover Prop. Trust Inc. v. WHE Assocs.,* 142 Md. App. 476, 790 A.2d 720, 728 (Md. Ct. Spec. App. 2002).

5

Here, the complaint alleges that the contract was formed during the January call between Hall, in North Carolina, and Fishman, in Maryland. Compl. ¶ 9. It is unclear whether the last act necessary to make the contract binding occurred on the Maryland or North Carolina end of the line.[2] Because the substantive law of Maryland governing breach of contract and unjust enrichment does not materially differ from that of North Carolina, the result is the same under either state's law.

C.  Breach of Contract Claim

Contract formation requires "an offer by one party and an unconditional acceptance of that precise offer by the other." *Estrin v. Natural Answers, Inc.,* 103 Fed. Appx. 702, 705 (4th Cir. 2004)(citing *Lemlich v. Board of Trs. Inst.,* 282 Md. 495, 385 A.2d 1185, 1198 (Md. 1978)). It also requires the parties to manifest mutual assent to the terms of the agreement. *Cochran v. Norkunas,* 398 Md. 1, 919 A.2d 700, 708 (Md. 2007). Mutual assent occurs when there is: (1) sufficient definiteness of terms, and (2) mutual intent to be bound. *Id.*

There is sufficient definiteness if the parties agree on the "essential" terms of the deal. *McKenzie v. Comcast Commc'ns, Inc.,* 393 F. Supp. 2d 362, 369-70 (D. Md. 2005). Although a

---

[2] *See Chesapeake & Potomac Tel. Co. of Md. v. Alleghany Constr. Co.,* 340 F. Supp 734, 739 (D. Md. 1972)(holding Pennsylvania law applied to interpret contract that was mailed to and then accepted in Pennsylvania because acceptance made the contract binding).

contract may contain some open term, no contract is formed when the parties fail to agree on essential terms. *Estrin,* 103 Fed.Appx. at 704.[3] Nor is a contract formed when the parties do not intend to bind themselves until the execution of a later agreement. *Phoenix Mut. Life Ins. Co. v. Shady Grove Plaza Ltd. Partnership,* 734 F. Supp. 1181, 1187 (D. Md. 1990) (letter of intent was not an enforceable contract when neither party intended to be bound until execution of a comprehensive written agreement). Mere agreement on the goals of a negotiation does not give rise to a contract between the negotiating parties. *Id.*[4]

RCG contends that during the January call, the parties reached a binding oral agreement to split 50:50 the work and architectural fees for *both* phases of the NCCU project. Pl.'s Opp'n 13-14. It argues that this agreement was memorialized in the January emails and the LOI and was sufficiently definite to bind the parties. *Id.* 5, 7. BBH argues that (1) no agreement on the essential terms of a deal for the full NCCU project was ever reached, and that (2) the LOI is clear that no oral contract was formed during the January call. Def's Summ. J. Mot. 7-8.

---

[3] *Boyce v. Mahan,* 285 N.C. 730, 280 S.E.2d 692, 695 (N.C. 1974)("To constitute a valid contract, parties must assent to the same thing in the same sense, and their minds must meet as to all terms.").

[4] *Id.* at 695 ("a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations") (internal citations omitted).

7

The parties appear to agree that the work and fee splitting provision was an "essential" term of their prospective agreement. Pl.'s Opp'n 15-19; Def. Summ. J. Mot. 9-10. Thus, to show that a contract for both phases of the NCCU project was formed, RCG must provide evidence from which a reasonable jury could find agreement between the parties on that term. RCG has offered: (1) the January emails, (2) correspondence between RCG and BBH before the LOI, (3) the LOI, and (4) communications between RCG and BBH following the LOI and Consulting Agreement.

None of this correspondence shows an agreement on how to split the work and fees for the full project. Instead, the evidence shows that the 50:50 work and fee split was merely a "goal" that the parties never achieved.[5] Additionally, the January call, the January emails, and the parties' discussions in early 2008 preceded the LOI, which was the culmination of those prior negotiations.

The LOI was "not intended to contractually bind either [party] . . . until an Agreement . . . satisfactory to [both parties] is fully executed." Pl.'s Opp'n Ex. C. It also

---

[5] The January emails between Fishman and Douglas Hall refer to the 50:50 split as a "goal." Pl.'s Opp'n, Ex. B. Fishman's May 2008 letter proposed that the LOI include a statement that "BBH Design and RCG agree to a goal of a 50[:]50 split of the work and fee." Pl.'s Opp'n, Ex. D. A January 15, 2009 letter, from Fishman to Hall, further states: "BBH and RCG pursued this project together. You told me repeatedly that the goal was a '50[:]50' split of work and fee." Pl.'s Opp'n, Ex. F.

8

provided that it was merely the "intent of BBH Design to contract with [RCG] for [both phases] of the project." *Id*. Based on this evidence no reasonable jury could find that the parties had agreed to split the work and fees of both phases of the NCCU project 50:50.[6] Accordingly, summary judgment will be granted to BBH on the breach of contract claim.

    D.    Unjust Enrichment Claim

Unjust enrichment occurs when: (1) the plaintiff confers a benefit on the defendant, (2) the defendant knows of that benefit, and (3) the defendant's retention of the benefit without payment is inequitable. *Benson v. State*, 389 Md. 615, 887 A.2d 525, 546 (Md. 2005). RCG contends that its name and reputation helped BBH secure the NCCU project, and BBH has been unjustly enriched because it has not compensated RCG for this use. Pl.'s Opp'n 21. BBH argues that RCG did not influence NCCU's decision to award the nursing school project to BBH, and BBH has fully compensated RCG for its services. Def.'s Reply 3-4.

RCG has provided a declaration from its principal, Jonathan Fishman, that it is "highly unlikely that BBH would have been selected for the Project absent a partnership with RCG." Fishman

---

[6] *See Conolly v. Clark*, 457 F.3d 872, 875-77 (8th Cir. 2006)(affirming grant of summary judgment on the basis that no genuine issue of material fact existed as to parties intent to bind themselves where a letter of intent executed after the purported oral contract expressly stated it was "merely a non-binding letter of intent").

9

Decl. 2d. ¶ 5. Fishman's unsupported opinion about the NCCU contract is insufficient to defeat summary judgment.[7]

Based on RCG's evidence, no reasonable jury could find that BBH unfairly benefitted from the use of RCG's name. Thus, BBH's motion for summary judgment will be granted on the unjust enrichment claim.

III. Conclusion

For the reasons stated above, BBH's motion for summary judgment will be granted.


September 2, 2010            _____/s/_____
Date                         William D. Quarles, Jr.
                             United States District Judge

---

[7] A party's own self-serving affidavits, consisting of "conclusory" statements lacking objective corroboration, are insufficient to defeat summary judgment. *Evans v. Techs. Apps. & Serv. Co.,* 80 F.3d 954, 962 (4th Cir. 1996).